UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
-----------------------------x
                              :
MARIA GONZALEZ                :    Civ. No. 3:17CV01385(SALM)
                              :
v.                            :
                              :
NANCY A. BERRYHILL,           :    August 17, 2018
ACTING COMMISSIONER, SOCIAL   :
SECURITY ADMINISTRATION       :
                              :
-----------------------------x
```

## RULING ON CROSS MOTIONS

Plaintiff Maria Gonzalez ("plaintiff"), brings this appeal under §205(g) of the Social Security Act (the "Act"), as amended, 42 U.S.C. §405(g), seeking review of a final decision by the Commissioner of the Social Security Administration (the "Commissioner" or "defendant") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Act. Plaintiff has moved for an order reversing the decision of the Commissioner, or in the alternative to remand for a new hearing. [Doc. #24]. Defendant has filed a cross-motion seeking an order affirming the decision of the Commissioner. [Doc. #26].

For the reasons set forth below, plaintiff's Motion for Order Reversing the Decision of the Commissioner or in the Alterative Motion for Remand for a Hearing **[Doc. #24]** is **DENIED,**

~ 1 ~

and defendant's Motion for an Order Affirming the Decision of the Commissioner **[Doc. #26]** is **GRANTED.**

I.   **PROCEDURAL HISTORY**[1]

Plaintiff filed concurrent applications for DIB and SSI on October 18, 2012, alleging disability beginning July 1, 2012. See Certified Transcript of the Administrative Record, Doc. #17, compiled on January 10, 2018, (hereinafter "Tr.") at 212-27. Plaintiff's applications were denied initially on June 19, 2013, see Tr. 138-45, and upon reconsideration on October 18, 2013. See Tr. 150-56.

On November 20, 2014, plaintiff, represented by Attorneys Kirk Lowry and Matthew Bardos, appeared and testified at a hearing before Administrative Law Judge ("ALJ") I.K. Harrington. See Tr. 35-77. Vocational Expert ("VE") Richard Barry Hall testified by telephone at the hearing. See Tr. 60-61, 72-76, 171-75. On December 24, 2014, the ALJ issued an unfavorable decision. See Tr. 12-34. On June 20, 2017, the Appeals Council denied plaintiff's request for review, thereby making the ALJ's December 24, 2014, decision the final decision of the Commissioner. See Tr. 1-6. The case is now ripe for review under 42 U.S.C. §405(g).

---

[1] Plaintiff filed a Joint Medical Chronology and Statement of Facts on behalf of both parties. See Doc. #24-1.

Plaintiff, now represented by Attorney Olia Yelner, timely filed this action for review and moves to reverse the Commissioner's decision, or in the alternative, to remand for a new hearing. [Doc. #24]. On appeal, plaintiff argues:

1. The ALJ failed to properly assess plaintiff's credibility;

2. The ALJ failed to properly weigh the medical opinion evidence; and

3. The ALJ's Residual Functional Capacity ("RFC") determination fails to include all of plaintiff's impairments.

See generally Doc. #24-2 at 22-43. As set forth below, the Court finds that ALJ Harrington did not err as contended, and that her decision is supported by substantial evidence of record.

## II.  **STANDARD OF REVIEW**

The review of a Social Security disability determination involves two levels of inquiry. First, the Court must decide whether the Commissioner applied the correct legal principles in making the determination. Second, the Court must decide whether the determination is supported by substantial evidence. See Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998) (citation omitted). Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion; it is more than a "mere scintilla." Richardson v. Perales, 402 U.S.

389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). The reviewing court's responsibility is to ensure that a claim has been fairly evaluated by the ALJ. <u>See</u> <u>Grey v. Heckler</u>, 721 F.2d 41, 46 (2d Cir. 1983) (citation omitted).

The Court does not reach the second stage of review – evaluating whether substantial evidence supports the ALJ's conclusion – if the Court determines that the ALJ failed to apply the law correctly. <u>See</u> <u>Norman v. Astrue</u>, 912 F. Supp. 2d 33, 70 (S.D.N.Y. 2012) ("The Court first reviews the Commissioner's decision for compliance with the correct legal standards; only then does it determine whether the Commissioner's conclusions were supported by substantial evidence." (citing <u>Tejada v. Apfel</u>, 167 F.3d 770, 773-74 (2d Cir. 1999))). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." <u>Johnson v. Bowen</u>, 817 F.2d 983, 986 (2d Cir. 1987).

"[T]he crucial factors in any determination must be set forth with sufficient specificity to enable [a reviewing court]

to decide whether the determination is supported by substantial evidence." <u>Ferraris v. Heckler</u>, 728 F.2d 582, 587 (2d Cir. 1984) (alterations added) (citing <u>Treadwell v. Schweiker</u>, 698 F.2d 137, 142 (2d Cir. 1983)). The ALJ is free to accept or reject the testimony of any witness, but a "finding that the witness is not credible must nevertheless be set forth with sufficient specificity to permit intelligible plenary review of the record." <u>Williams ex rel. Williams v. Bowen</u>, 859 F.2d 255, 260-61 (2d Cir. 1988) (citing <u>Carroll v. Sec. Health and Human Servs.</u>, 705 F.2d 638, 643 (2d Cir. 1983)). "Moreover, when a finding is potentially dispositive on the issue of disability, there must be enough discussion to enable a reviewing court to determine whether substantial evidence exists to support that finding." <u>Johnston v. Colvin</u>, No. 3:13CV00073(JCH), 2014 WL 1304715, at *6 (D. Conn. Mar. 31, 2014) (citing <u>Peoples v. Shalala</u>, No. 92CV4113, 1994 WL 621922, at *4 (N.D. Ill. Nov. 4, 1994)).

It is important to note that in reviewing the ALJ's decision, this Court's role is not to start from scratch. "In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." <u>Talavera v. Astrue</u>, 697 F.3d 145, 151 (2d Cir.

2012) (quoting <u>Lamay v. Comm'r of Soc. Sec.</u>, 562 F.3d 503, 507 (2d Cir. 2009)). **"[W]hether there is substantial evidence supporting the appellant's view is not the question here; rather, we must decide whether substantial evidence supports <u>the ALJ's decision</u>**." <u>Bonet ex rel. T.B. v. Colvin</u>, 523 F. App'x 58, 59 (2d Cir. 2013) (citations omitted).

### III. <u>SSA LEGAL STANDARD</u>

Under the Social Security Act, every individual who is under a disability is entitled to disability insurance benefits. 42 U.S.C. §423(a)(1).

To be considered disabled under the Act and therefore entitled to benefits, plaintiff must demonstrate that she is unable to work after a date specified "by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Such impairment or impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §423(d)(2)(A); 20 C.F.R. §§404.1520(c), 416.920(c) (requiring that the impairment "significantly limit[] ... physical or

mental ability to do basic work activities" to be considered

"severe" (alterations added)).[2]

There is a familiar five-step analysis used to determine if

a person is disabled. <u>See</u> 20 C.F.R. §§404.1520, 416.920. In the

Second Circuit, the test is described as follows:

> First, the Secretary considers whether the claimant is
> currently engaged in substantial gainful activity. If he
> is not, the Secretary next considers whether the
> claimant has a "severe impairment" which significantly
> limits his physical or mental ability to do basic work
> activities. If the claimant suffers such an impairment,
> the third inquiry is whether, based solely on medical
> evidence, the claimant has an impairment which is listed
> in Appendix 1 of the regulations. If the claimant has
> such an impairment, the Secretary will consider him
> disabled without considering vocational factors such as
> age, education, and work experience; the Secretary
> presumes that a claimant who is afflicted with a "listed"
> impairment is unable to perform substantial gainful
> activity.

<u>Berry v. Schweiker</u>, 675 F.2d 464, 467 (2d Cir. 1982) (<u>per</u>

<u>curiam</u>). If and only if the claimant does <u>not</u> have a listed

---

[2] Some of the Regulations cited in this decision were amended,
effective March 27, 2017. Throughout this decision, and unless
otherwise specifically noted, the Court applies and references
the versions of those Regulations that were in effect at the
time of the ALJ's decision. <u>See</u> <u>Lowry v. Astrue</u>, 474 F. App'x
801, 805 n.2 (2d Cir. 2012) (applying and referencing version of
regulation in effect when ALJ adjudicated plaintiff's claim);
<u>see also</u> <u>Alvarez v. Comm'r of Soc. Sec.</u>, No. 14CV3542(MKB), 2015
WL 5657389, at *11 n.26 (E.D.N.Y. Sept. 23, 2015) ("[T]he Court
considers the ALJ's decision in light of the regulation in
effect at the time of the decision." (citing <u>Lowry</u>, 474 F. App'x
at 805 n.2)).

impairment, the Commissioner engages in the fourth and fifth
steps:

> Assuming the claimant does not have a listed impairment,
> the fourth inquiry is whether, despite the claimant's
> severe impairment, he has the residual functional
> capacity to perform his past work. Finally, if the
> claimant is unable to perform his past work, the
> Secretary then determines whether there is other work
> which the claimant could perform. Under the cases
> previously discussed, the claimant bears the burden of
> proof as to the first four steps, while the Secretary
> must prove the final one.

Id.

"Through the fourth step, the claimant carries the burdens
of production and persuasion, but if the analysis proceeds to
the fifth step, there is a limited shift in the burden of proof
and the Commissioner is obligated to demonstrate that jobs exist
in the national or local economies that the claimant can perform
given [her] residual functional capacity." Gonzalez ex rel.
Guzman v. Dep't of Health and Human Serv., 360 F. App'x 240, 243
(2d Cir. 2010) (alteration added) (citing 68 Fed. Reg. 51155
(Aug. 26, 2003)); Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir.
2009) (per curiam)). The RFC is what a person is still capable
of doing despite limitations resulting from her physical and
mental impairments. See 20 C.F.R. §§404.1545(a)(1),
416.945(a)(1).

"In assessing disability, factors to be considered are (1)
the objective medical facts; (2) diagnoses or medical opinions

based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." Bastien v. Califano, 572 F.2d 908, 912 (2d Cir. 1978). "[E]ligibility for benefits is to be determined in light of the fact that 'the Social Security Act is a remedial statute to be broadly construed and liberally applied.'" Id. (quoting Haberman v. Finch, 418 F.2d 664, 667 (2d Cir. 1969)).

## IV.   **THE ALJ'S DECISION**

Following the above-described five-step evaluation process, the ALJ concluded that plaintiff was not disabled under the Act. See Tr. 29. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of July 1, 2012. See Tr. 17. At step two, the ALJ found that plaintiff had the severe impairments of major depressive disorder and posttraumatic stress disorder (PTSD). See Tr. 17-18. The ALJ found plaintiff also suffered from the following non-severe impairments: hypertension; backache; migraines; cervicalgia; shingles; gout; and obesity. See Tr. 18-19. The ALJ next determined that "mental retardation and borderline intellectual functioning are non-medically determinable impairments." Tr. 19.

At step three, the ALJ found that plaintiff's impairments, either alone or in combination, did not meet or medically equal the severity of any of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. See Tr. 19-22. The ALJ specifically considered Listings 12.04 (affective disorders) and 12.06 (anxiety related disorder). See Tr. 20-22. Before moving on to step four, the ALJ found plaintiff had the RFC

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant is capable of performing simple, routine tasks, involving no more than simple, short instructions and simple work-related decisions, with few work places changes. The claimant should avoid working at fixed production rate pace. She should also avoid interaction with the general public, but could have occasional interaction with co-workers and supervisors[.]

Tr. 22 (sic). At step four, the ALJ concluded that plaintiff was unable to perform her past relevant work "as an adult home care, child care, catering, floor associate and stocker[.]" Tr. 27 (sic). At step five, and after considering plaintiff's age, education, work experience and RFC, as well as the testimony of the VE, the ALJ found that other jobs existed in significant numbers in the national economy that plaintiff could perform. See Tr. 28-29.

**V.   DISCUSSION**

Plaintiff raises three general arguments in support of reversal or remand. The Court will address each in turn.

**A.  The ALJ's Assessment of Plaintiff's Credibility**

Plaintiff asserts that the ALJ erred in her assessment of plaintiff's credibility. See Doc. #24-2 at 22-25. Plaintiff specifically takes issue with the ALJ's reliance on her lack of mental health treatment and medication compliance. See id. Defendant responds that the ALJ properly assessed plaintiff's statements concerning the intensity, persistence and limiting effects of plaintiff's symptoms. See Doc. #26-1 at 14-16.

After summarizing plaintiff's testimony, and a "careful consideration of the evidence," the ALJ found that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms[,]" but that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for reasons explained in this decision." Tr. 23. In making that determination the ALJ considered: "the objective clinical evidence and treatment notes"; the type of medical treatment plaintiff received; plaintiff's non-compliance with her treatment and medication regimens; plaintiff's failure to follow-up on her doctors' recommendations; plaintiff's inconsistent statements; the reasons plaintiff stopped working; plaintiff's daily activities; and plaintiff's poor work history. See Tr. 23-25.

"Credibility findings of an ALJ are entitled to great deference and therefore can be reversed only if they are patently unreasonable." Pietrunti v. Dir., Office of Workers' Comp. Programs, 119 F.3d 1035, 1042 (2d Cir. 1997) (quotation marks and citation omitted). The regulations set forth a two-step process that an ALJ must follow in evaluating plaintiff's subjective complaints. First, the ALJ must determine whether the record demonstrates that the plaintiff possesses a "medically determinable impairment that could reasonably be expected to produce [plaintiff's] symptoms, such as pain." 20 C.F.R. §§404.1529(b), 416.929(b). Second, the ALJ must assess the credibility of the plaintiff's complaints regarding "the intensity and persistence of [plaintiff's] symptoms" to "determine how [the] symptoms limit [plaintiff's] capacity for work." 20 C.F.R. §§404.1529(c), 416.929(c). The ALJ should consider factors relevant to plaintiff's symptoms, such as pain, including: (1) the claimant's daily activities; (2) the "location, duration, frequency, and intensity" of the claimant's pain or other symptoms; (3) any precipitating or aggravating factors; (4) the "type, dosage, effectiveness, and side effects of any medication" taken by claimant to alleviate the pain; (5) "treatment, other than medication," that plaintiff has received for relief of pain or other symptoms; (6) any other measures

plaintiff has used to relieve symptoms; and (7) other factors concerning plaintiff's "functional limitations and restrictions due to pain or other symptoms." Id. The ALJ must consider all evidence in the case record. See SSR 96-7p, 1996 WL 374186, at *5 (S.S.A. July 2, 1996). The credibility finding "must contain specific reasons ... supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Id. at *4.

Although an ALJ may properly consider a plaintiff's failure to follow treatment as prescribed, "[t]he law is clear, that an ALJ may not draw negative inferences from a claimant's lack of treatment without considering any explanations the claimant may provide." Campbell v. Astrue, 596 F. Supp. 2d 446, 454 (D. Conn. 2009); see also Schlichting v. Astrue, 11 F. Supp. 3d 190, 207 (N.D.N.Y. 2012) (The "ALJ must not draw an adverse inference from a claimant's failure to seek or pursue treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." (citation and internal quotation marks omitted)). When a claimant suffers from mental illness,

"faulting" him or her "for failing to pursue mental health treatment is a 'questionable practice.'" <u>Schlichting</u>, 11 F. Supp. 3d at 207.

Plaintiff contends that the ALJ erred in her credibility determination because plaintiff "presented fully compliant with Alprazolam[.]" Doc. #24-2 at 24. Plaintiff relies on one treatment note in support of that assertion. <u>See</u> <u>id.</u> (citing Tr. 537). The record cited by plaintiff is dated May 3, 2013, and states: "Patient last seen on 10/2012. She is fully compliant with alprazolam, 40% compliant with bupropion, uses temazepam sporadically and does not take prazosin due to 'feeling drowsy in the morning.'" Tr. 537.[3] Although that <u>one</u> record indicates plaintiff was then compliant with <u>one</u> medication, it also states that she was not compliant with other prescribed medications <u>and</u> had not been seen in over six months. <u>See</u> <u>id.</u> Multiple other treatment records reflect plaintiff's general non-compliance with treatment and medication regimens and her doctors' recommendations. <u>See, e.g.,</u> Tr. 443 ("poor compliance with recommendations"); Tr. 467 ("75-90%" "compliant with

---

[3] Plaintiff asserts: "It is unclear whether she needed to take both of these benzodiazepines, or whether Alprazolam was therapeutically sufficient." Doc. #24-2 at 24. Regardless of whether or not plaintiff "needed" to take her prescribed medications, plaintiff's treating physicians found it appropriate to prescribe the medication regimen they did, and plaintiff did not comply with that treatment.

medications"); Id. ("No good engagement/follow up with therapist."); Tr. 532 ("poorly compliant with current medication regimen"); Tr. 533 (Plaintiff "acknowledges great difficulty trusting doctors' recommendations and following medication schedules."); Tr. 534 (noting plaintiff's "resistance to treatment, difficulty trusting recommendations"); Tr. 543 ("I expressed my concerns about the limited compliance with therapy referrals, recommendation and medication options."); Tr. 541 ("I reflected on her resistance getting resources where she lives."); Tr. 543 ("I expressed my concerns about the limited compliance with therapy referrals, recommendation and medication options."). Accordingly, the ALJ's determination that plaintiff was not fully compliant with her medication and treatment regimen is supported by substantial evidence of record.

Plaintiff next asserts the related argument that the ALJ improperly determined plaintiff had no barriers to treatment and failed to discuss plaintiff's reasons for failing to obtain treatment. See Doc. #24-2 at 24. Plaintiff contends that she "has significant psychosocial stressors, including limited financial resources, feeling victimized, and helpless (Tr. 24). She has been noted to distrust her doctors and medical treatment. These are certainly allowable barriers to treatment.

The record is clear that Ms. Gonzalez has fears about side-effects of her psychotropic medications." Id.

After summarizing the evidence relating to plaintiff's treatment and medication non-compliance, the ALJ stated, in pertinent part: "[T]he claimant's frequent noncompliance with treatment shows the claimant is contributing to her own symptoms and that she did not consider her impairments to be so significant as to require treatment. The claimant had no barriers to seeking treatment, as she was insured through Medicaid. Moreover, the record shows that she was able to 'use transportation through insurance' for medical treatment." Tr. 24.

Here, it is not apparent that the ALJ considered plaintiff's explanations for failing to comply with her doctors' recommendations and prescribed treatment. Those explanations are well-documented throughout the record. See, e.g., Tr. 450 ("She copes by isolating, but yet does not seek counseling, fearful of processing the many memories she has of the traumas."); Tr. 531 ("The patient continues to take medication irregularly ... inquires about the possibility of using other medication but has significant concerns about side effects, drug-drug interactions and possible weight gain."); Tr. 533 ("She continues to voice significant ambivalence about the treatment she is willing to

accept and acknowledges having poor compliance with recommended treatment. She ... acknowledges having great difficulty trusting doctors' recommendations and following medication schedules."). Nevertheless, the ALJ's failure to consider plaintiff's explanations would be harmless error, as plaintiff's non-compliance was but one of several factors considered when assessing plaintiff's credibility.

The ALJ also explicitly considered the inconsistency of plaintiff's statements, her poor work history, reasons for ceasing work, and activities of daily living when assessing plaintiff's credibility. See Tr. 24-25. Plaintiff does not take issue with the other aspects of the ALJ's credibility determination, presumably because the ALJ appropriately considered those other factors. Further, each of the reasons given for discounting plaintiff's credibility is supported by substantial evidence of record.

The record contains substantial evidence of plaintiff's poor work history. See, e.g., Tr. 248 (job history); Tr. 320 (pre-hearing memorandum: "Despite being 50 years old and living in the mainland United States since age 8, Ms. Gonzalez has had a minimal history of employment."). "Just as a good work history may be deemed probative of credibility, poor work history may

prove probative as well." Schaal v. Apfel, 134 F.3d 496, 502 (2d Cir. 1998).

Plaintiff's testimony was also inconsistent with other portions of the record. Compare, e.g., Tr. 47 (plaintiff's testimony: "I don't like taking a lot of, you know, taking a lot of meds."); with Tr. 284 ("I am taking too many medications to determine which medication causes side effects."); Tr. 307 (plaintiff's current medications, listing eighteen medications); compare, e.g., Tr. 58 (plaintiff's testimony that she was not seeing a therapist because she "used to go ... but I didn't get like, I feel like I wasn't getting anything out of it."); with Tr. 450 (Plaintiff "does not seek counseling"), and Tr. 539 ("She is also looking into a therapist in her living area."). Her statements about her activities of daily living were also inconsistent. Compare, e.g., Tr. 259-62 (Activities of Daily Living Report asserting that plaintiff is unable to "go to the stores, go out to pay bills, grocery shopping[,]" (sic), care for her hair, do laundry, or go out alone), with Tr. 355 ("Independent in activities of daily living."). Plaintiff also reported to the consultative examiner that she stopped working due to a lack of transportation and stress, see Tr. 450, and not because of her allegedly disabling limitations. "Here, the ALJ found inconsistencies between [plaintiff's] statements and the

evidence. ... Thus, the ALJ acted well within his discretion in concluding that [plaintiff] was less than credible on at least some of her claims." Burnette v. Colvin, 564 F. App'x 605, 609 (2d Cir. 2014); see also Cherry v. Colvin, No. 3:13CV1440(SRU), 2016 WL 164988, at *4 (D. Conn. Jan. 14, 2016) ("One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record[.]" (citation omitted)).

The ALJ's consideration of plaintiff's non-compliance and lack of treatment was but one factor in the ALJ's overall credibility determination, which complies with the Regulations and is supported by substantial evidence. Accordingly, there is no reversible error. See Schlichting, 11 F. Supp. 3d at 207 (ALJ committed harmless error where "[t]he reference to Plaintiff's failure to pursue treatment ... was only part of the ALJ's credibility assessment."); Kuchenmeister v. Berryhill, No. 16CV7975(HBP), 2018 WL 526547, at *19 (S.D.N.Y. Jan. 19, 2018) ("ALJ Katz's error was harmless. ALJ Katz's overall determination to discount plaintiff's subjective complaints is supported by substantial evidence, even if plaintiff's inconsistent attendance at therapy sessions is ignored.").

Here, where the ALJ has identified specific reasons for her credibility determination, which are supported by substantial

evidence in the record, the Court will not second-guess her

decision. See Stanton v. Astrue, 370 F. App'x 231, 234 (2d Cir.

2010). Moreover, the ALJ had the opportunity to personally

observe plaintiff and her testimony, something the Court cannot

do. Accordingly, the Court finds no error in the ALJ's

assessment of plaintiff's credibility. As such, the Court

declines to remand this matter for "further development as to

the claimant's compliance with treatment." Doc. #24-2 at 24.

### B.    *The Treating Physician Rule*

Plaintiff next contends that the ALJ improperly weighed the

medical opinion evidence because she "did not assign any of one

Ms. Gonzalez's treating physicians significant or controlling

weight." Doc. #24-2 at 25 (sic). Plaintiff further contends that

the ALJ erred by assigning no weight to the opinion of

consultative examiner Dr. Martinez and substantial weight to the

state reviewing, non-examining sources. See generally id. at 32-

26. Defendant generally responds that the ALJ afforded proper

weight to the medical opinions of record. See generally Doc.

#26-1 at 4-14.

### 1.    Applicable Law, Generally

"The SSA recognizes a 'treating physician' rule of
deference to the views of the physician who has engaged
in the primary treatment of the claimant," Green-
Younger, 335 F.3d at 106. According to this rule, the
opinion of a claimant's treating physician as to the
nature and severity of the impairment is given

> "controlling weight" so long as it "is well-supported by
> medically acceptable clinical and laboratory diagnostic
> techniques and is not inconsistent with the other
> substantial evidence in the case record." 20 C.F.R.
> §404.1527(d)(2); see, e.g., Green-Younger, 335 F.3d at
> 106; Shaw, 221 F.3d at 134.

Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008); see also 20

C.F.R. §§404.1527(c), 416.927(c). If the opinion, however, is

not "well-supported" by "medically acceptable" clinical and

laboratory diagnostic techniques, then the opinion cannot be

entitled to controlling weight. 20 C.F.R. §§404.1527(c)(2),

416.927(c)(2).

When weighing any medical opinion, treating or otherwise,

the Regulations require that the ALJ consider the following

factors: length of treatment relationship; frequency of

examination; nature and extent of the treatment relationship;

relevant evidence used to support the opinion; consistency of

the opinion with the entire record; and the expertise and

specialized knowledge of the source. See 20 C.F.R.

§§404.1527(c)(2)-(6), 416.927(c)(2)-(6); SSR 96-2P, 1996 WL

374188, at *2 (S.S.A. July 2, 1996); SSR 06-03P, 2006 WL

2329939, at *3-4 (S.S.A. Aug. 9, 2006). The Second Circuit does

not, however, require a "slavish recitation of each and every

factor [of 20 C.F.R. §§404.1527(c), 416.927(c)] where the ALJ's

reasoning and adherence to the regulation are clear." Atwater v.

Astrue, 512 F. App'x 67, 70 (2d Cir. 2013) (citing Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004) (per curiam)).

### 2. Dr. Alejandro Gonzalez-Restrepo

Plaintiff contends that the ALJ should have "accepted" the opinion of plaintiff's treating psychiatrist, Dr. Alejandro Gonzalez-Restrepo, because he is a "Board Certified, long-term psychiatrist, and because his multiple opinions are internally consistent and have not been contradicted by any treating source[.]" Doc. #24-2 at 31-32.

The record reflects three mental RFC assessments and two psychiatric review techniques ("PRTs") authored by Dr. Gonzalez-Restrepo. See Tr. 443-46, 467-84, 555-57, 560-73. The two PRTs opine that: plaintiff meets Listings 12.04 (affective disorders) and 12.06 (anxiety related disorders), see Tr. 471, 474, 476, 560, 563, 565; suffers from moderate restrictions in her activities of daily living; and suffers from marked difficulties in maintaining social functioning, concentration, persistence, or pace. See Tr. 481, 570. Dr. Gonzalez-Restrepo's mental RFC determinations similarly conclude that plaintiff is moderately to markedly restricted in all areas of mental functioning. See 443-46, 467-70, 555-57.

In weighing Dr. Gonzalez-Restrepo's opinions, the ALJ stated:

The claimant's mental health treating source, Dr. Gonzalez-Restrepo provided several statements (Exhibit 9F, 10F) regarding the claimant's limitations. In particular, he remarked that the claimant is moderately to markedly limited in activities of daily living, social functioning and concentration, persistence, or pace (Exhibits 13F, 14F). The undersigned gives minimal weight to Dr. Gonzalez-Restrepo's opinions regarding the claimant's limitations. Although he is a treating source, his opinions are inconsistent with his actual treatment notes and the objective medical evidence as a whole. In particular, his reference to the claimant's continual noncompliance with recommendations and referrals for psychotherapy and medication (Exhibit 11F). As previously mentioned, the claimant's longstanding noncompliance indicates that the claimant was contributing to her own symptoms and the claimant did not consider her impairments to be so serious or disabling as to follow through with the recommended referrals and medication.

Tr. 26.

Plaintiff first contends that "the ALJ did not adequately address the reasons for Ms. Gonzalez's noncompliance[]" and that her "non-compliance also has no bearing on Dr. Restrepo's opinion." Doc. #24-2 at 28. As previously stated, substantial evidence supports the ALJ's finding that plaintiff was non-compliant with prescribed and recommended treatment and medications. The ALJ's failure to consider plaintiff's explanations for that non-compliance is also harmless error in the context of the treating physician rule, where, as here, the ALJ discounted Dr. Gonzalez-Restrepo's opinions for other reasons in addition to plaintiff's non-compliance. See Campbell, 596 F. Supp. 2d at 454 (ALJ's failure to consider plaintiff's

explanation for her lack of treatment was harmless error where "the ALJ gave multiple reasons for discounting Dr. Prewitt's retrospective opinion, and all except the failure to seek treatment are legally sound."). It was also well within the province of the ALJ to consider plaintiff's treatment history when assessing the weight to give Dr. Gonzalez-Restrepo's opinions. See Diaz-Sanchez v. Berryhill, 295 F. Supp. 3d 302, 306 (W.D.N.Y. 2018) ("[T]he ALJ's consideration of plaintiff's mental health treatment history – or more appropriately, lack thereof – was appropriate[] ... in weighing Dr. Lin's opinion[.]"). Accordingly, the ALJ did not err by considering plaintiff's non-compliance and treatment history when assessing the weight to afford to Dr. Gonzalez-Restrepo's opinions.

Plaintiff also claims the ALJ erred by noting that plaintiff had seen Dr. Gonzalez-Restrepo "four times, in the span of two years period from October 5, 2012 to October 2014." Doc. #24-2 at 29 (citing Tr. 23) (sic). Plaintiff contends:

> Ms. Gonzalez actually started seeing Dr. Gonzalez Restrepo well before 2012, with treatment notes and a psychiatric evaluation in December 2010 (Tr. 529). On December 3, 2012 Dr. Alejandro Gonzalez Restrepo wrote that he has treated Ms. Gonzalez since December 2, 2010, with appointments every 2 to 4 months. This means that he has seen her much more than four times. As a matter of fact, by the time that Ms. Gonzalez had her hearing in November 2014, she had seen Dr. Gonzalez Restrepo anywhere from 12 to 23 times.

Doc. #24-2 at 29. Plaintiff's argument misses the mark. The ALJ
did not state that plaintiff had only seen Dr. Gonzalez-Restrepo
four times over the course of their entire treatment
relationship. Rather, the ALJ correctly identified that the
record reflects just a handful of treatment notes from the
period of October 5, 2012, through October 2014.[4] See Tr. 427
("Please note: only seen 1 time from 10/2012 to present [April
12, 2013]. All other appts – pt did not show for appts." (sic));
Tr. 535 (October 5, 2012, treatment note); Tr. 537 (May 3, 2013,
treatment note); Tr. 539 (October 10, 2013, treatment note), Tr.
541 (June 27, 2014, treatment note); Tr. 534 (October 10, 2014,
treatment note). That time period is significant in light of
plaintiff's alleged onset date of July 1, 2012. The ALJ was well
within her discretion to consider the nature of the treatment
relationship between plaintiff and Dr. Gonzalez-Restrepo during
the time period under consideration. See 20 C.F.R.
§§404.1527(c)(2)(i), 416.927(c)(2)(i) ("Generally, the longer a
treating source has treated you and the more times you have been
seen by a treating source, the more weight we will give to the

---

[4] Although the ALJ states plaintiff presented to Dr. Gonzalez-
Restrepo just four times over the course of two years, see Tr.
23, the record reflects five treatment notes for this period of
time. The ALJ's failure to reference one treatment record is not
significant, as five psychiatrist appointments over the course
of two years is still de minimis.

source's medical opinion."). Accordingly, the Court finds no
error in the ALJ having considered that fact.

Further, it is apparent that the ALJ did consider, although
not explicitly, the length of plaintiff's treating relationship
with Dr. Gonzalez-Restrepo. Not only does the record contain Dr.
Gonzalez-Restrepo's treatment notes from 2010, see Tr. 529, but
his opinions state that he first treated plaintiff on December
2, 2010, and/or that his assessments relate back to December of
2010. See Tr. 467, 471. Further, the ALJ referenced those
documents in her decision. See, e.g., Tr. 26 (referencing
Exhibit 11, pg. 5, which corresponds to page 529 of the
administrative record); see also id. (referencing Exhibit 9F,
which corresponds to the mental RFC assessment reflected at page
467 of the administrative record); id. (referencing Exhibit 10F,
which corresponds to the PRT reflected at page 471 of the
administrative record). Accordingly, the Court is able to glean
from the ALJ's decision that she considered the length of the
total treatment relationship between plaintiff and Dr. Gonzalez-
Restrepo. See, e.g., Cichocki v. Astrue, 534 F. App'x 71, 76 (2d
Cir. 2013) ("[R]emand is not required where 'the evidence of
record permits us to glean the rationale of an ALJ's
decision[.]'" (quoting Mongeur v. Heckler, 722 F.2d 1033, 1040
(2d Cir. 1983))); Daniel v. Berryhill, No. 3:17CV01015(SALM),

2018 WL 2128380, at *6 (D. Conn. May 9, 2018) (finding that the ALJ implicitly considered a treating physician's relationship with plaintiff where the ALJ "explicitly considered [the physician's] treatment notes throughout his decision[,]" and where the physician's opinion stated the date on which he first saw plaintiff).

Finally, plaintiff contends that the ALJ should have afforded controlling weight to the opinions of Dr. Gonzalez-Restrepo because the opinions are "internally consistent and have not been contradicted by any treating source[.]" Doc. #24-2 at 30. Those arguments, however, fail to account for the well supported reasons provided by the ALJ for discounting Dr. Gonzalez-Restrepo's opinions, including that they are inconsistent with his own treatment notes and the record as a whole. See Tr. 24. The ALJ's reasoning is supported by substantial evidence of record, as the extent of limitations assessed by Dr. Gonzalez-Restrepo does not comport with the unremarkable mental status examinations documented throughout the record. See, e.g., Tr. 391, 429, 529, 531, 534, 539. The ALJ also noted that Dr. Gonzalez-Restrepo assigned plaintiff a GAF of 55, which is "indicative of moderate symptoms[.]" Tr. 26 (citing Tr. 529); see also Tr. 531, 532, 533, 534 (GAF scores of 55 or above). That GAF score also contradicts Dr. Gonzalez-

Restrepo's opinions that plaintiff is markedly limited in many areas of mental functioning. "Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion." 20 C.F.R. §§404.1527(c)(3), 416.927(c)(3).

Further, plaintiff cites no authority to support the position that the ALJ must provide controlling weight to a treating source's opinion where it is not contradicted by another treating source's opinion. See Doc. #24-2 at 30. To the contrary, it is enough that the treating physician's opinion is contradicted by "other substantial evidence in the record." Wavercak v. Astrue, 420 F. App'x 91, 93 (2d Cir. 2011) (citation and internal quotation marks omitted) (emphasis added).

Accordingly, given the inconsistencies between Dr. Gonzalez-Restrepo's opinions and the record as a whole, the ALJ properly declined to afford his opinions controlling weight.

### 3. Dr. Pamela Jackson

Plaintiff next takes issue with the weight afforded to the two opinions of Dr. Pamela Jackson. See Doc. #24-2 at 30-32. Plaintiff contends that the ALJ failed to provide good reasons for discounting Dr. Jackson's opinions and should have afforded Dr. Jackson's opinions significant or controlling weight. See id.

The record contains two identical opinions authored by Dr. Jackson, one dated December 5, 2013, and the other October 27, 2014. See Tr. 485-92, 546-53. Those opinions generally limit plaintiff to less than sedentary work. See generally id. With respect to Dr. Jackson's opinions, the ALJ stated:

> The undersigned considered the medical source statement by the claimant's primary care physician, Dr. Jackson, who opined that the claimant is limited to less than sedentary exertion (Exhibit 10F, pg. 15-22). The undersigned gives this medical source statement no weight for several reasons. First, it is a check-list style form that appears to have been completed as an accommodation to the claimant and includes only conclusions regarding functional limitations without any rationale for those conclusions. Second, it is inconsistent with the actual treatment notes showing normal physical examinations. (Exhibit 10F; 12F). Lastly, the course of treatment with Dr. Jackson consisted of routine visits and conservative treatment. These factors are inconsistent with the kind of treatment one would expect if the claimant were truly disabled, as the doctor has reported in the medical source statement, which further detracts from the Dr. Jackson's opinion.

Tr. 25-26 (sic).[5]

Despite plaintiff's arguments to the contrary, the ALJ provided "good reasons" for ascribing no weight to the opinions of Dr. Jackson. First, the ALJ accurately described the nature

---

[5] Although the record contains two medical source statements by Dr. Jackson, the ALJ only explicitly refers to one. See Tr. 25. The two statements, although bearing different dates, are substantively identical. Compare Tr. 485-92, with 546-53. Plaintiff raises no error in that regard, and the Court declines to do so on her behalf.

of Dr. Jackson's opinions, namely that they are set forth on "a
checklist-style form ... and include[] only conclusions
regarding functional limitations without any rationale for those
conclusions." Tr. 25; see also Tr. 485-92, 546-53 (Dr. Jackson's
opinions). As the Second Circuit has noted, a check box form "is
only marginally useful for purposes of creating a meaningful and
reviewable factual record." Halloran, 362 F.3d at 31 n.2. That
is particularly true where, as here, Dr. Jackson did not
complete that portion of the forms which requested her to
"[e]xplain how and why the evidence supports your conclusions"
as to the exertional limitations found. See Tr. 486, 547. The
Regulations are instructive on this point. "The better an
explanation a source provides for a medical opinion, the more
weight [the Commissioner] will give that medical opinion." 20
C.F.R. §§404.1527(c)(3), 416.927(c)(3). Here, Dr. Jackson did
not provide any explanation for the exertional limitations
assessed, and otherwise provided conclusory and vague
explanations as to the other assessed limitations. Accordingly,
the ALJ properly discounted Dr. Jackson's opinions for the lack
of explanation.

Second, the ALJ appropriately considered the consistency of
Dr. Jackson's opinions with her treatment notes and plaintiff's
treatment history. See 20 C.F.R. §§404.1527(c)(4), 416.927(c)(4)

("Generally, the more consistent a medical opinion is with the record as a whole the more weight we will give to that medical opinion."). As stated by the ALJ, Dr. Jackson's restrictive opinions are at odds with her own treatment records, which reflect relatively benign physical examinations. See, e.g., Tr. 383, 386, 391, 393-94, 396, 398, 400-01, 402-03, 404, 437, 501, 509, 522. Additionally, there is no objective medical evidence of record, such as diagnostic imaging reports, to support the physical limitations assessed by Dr. Jackson.

Third, the ALJ considered that Dr. Jackson is plaintiff's "primary care physician" and not a specialist. See Tr. 25. That too is an appropriate factor to consider under the Regulations. See 20 C.F.R. §§404.1527(c)(5), 416.927(c)(5) ("We generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist.").

The ALJ also concluded that Dr. Jackson provided her opinion "as an accommodation to the claimant[.]" Tr. 25.[6] Plaintiff contends that assertion is baseless with no support in

---

[6] Plaintiff also contends that the ALJ substituted her opinion for that of Dr. Jackson's. See Doc. #24-2 at 31. The Court construes this as an argument directed to the ALJ's RFC determination, which will be addressed, infra.

the record. See Doc. #24-2 at 31-32. Although the Court has been
unable to independently locate support for that assertion, the
Court nonetheless finds no reversible error given the other
sound and well-supported reasons provided for discounting Dr.
Jackson's opinion.[7]

Accordingly, the Court finds no error in the ALJ's weighing
of Dr. Jackson's opinions or the reasons provided for assigning
those opinions no weight. See Wavercak, 420 F. App'x at 93.

### 4. Dr. Diana Badillo Martinez, Ph.D.

Next, plaintiff contends that the ALJ erred by affording no
weight to the June 11, 2013, opinion of consultative examiner
Dr. Diana Baldillo Martinez, Ph.D. See Doc. #24-2 at 32-43. With
respect to that opinion, the ALJ stated:

> The undersigned considered the opinion evidence by the
> consultative examiner, Dr. Martinez (Exhibit 7F). In
> evaluating this opinion evidence, the undersigned gives
> it no weight. Although Dr. Martinez examined the
> claimant, she apparently relied quite heavily on the
> claimant's subjective report of her symptoms and
> limitations and seemed to uncritically accept as true
> most, if not all, of what the claimant reported. Yet, as
> explained elsewhere in this decision, there exist good
> reasons for questioning the reliability of claimant's
> subjective complaints. Moreover, the doctor did not have

---

[7] Although the Court has been unable to locate support for that
statement, the Court notes that the Regulations do permit the
ALJ to consider such "other factors." See also 20 C.F.R.
§§404.1527(c)(6), 416.927(c)(6) ("When we consider how much
weight to give to a medical opinion, we will also consider any
factors you or others bring to your attention, or of which we
are aware, which tend to support or contradict the medical
opinion.").

the benefit of reviewing the other medical reports contained in the record. In addition, Dr. Martinez's opinion appears to rest, at least in part, on an assessment of impairments outside of her area of expertise, specifically her comments that the claimant's physical symptoms were poorly controlled and they preclude her from work. Dr. Martinez is an examining psychologist and not a treating medical doctor.

Tr. 26. Plaintiff contends the ALJ erred because she discounted Dr. Martinez's opinion for having "relied quite heavily on the claimant's subjective reports of her symptoms and limitations[.]" Doc. #24-2 at 33. Plaintiff asserts that reason is "conjecture" and not supported by the record. See id.

Plaintiff essentially argues that the ALJ failed to give good reasons for discounting the opinion of Dr. Martinez. "The treating physician rule does not apply to consulting doctors, and the ALJ does not have to provide the same 'good reasons' evidence for not crediting a consulting doctor with sufficient weight." Trail ex rel. Trail v. Colvin, No. 5:13CV0014(LEK), 2015 WL 224753, at *9 (N.D.N.Y. Jan. 15, 2015) (citation and quotation marks omitted).

Nevertheless, the decision to discount Dr. Martinez's opinion is supported by substantial evidence, even disregarding the ALJ's statement that Dr. Martinez relied on plaintiff's subjective complaints. In particular, the ALJ noted that Dr. Martinez did not have the benefit of reviewing plaintiff's medical record. See Tr. 26. That is significant as Dr.

Martinez's opinion is inconsistent with the records of plaintiff's treating providers. Compare, e.g., Tr. 450 (Dr. Martinez assessment: "Insight and ... judgment are poor."); with Tr. 391 (Dr. Jackson assessment: "Insight: good judgment"); Tr. 429, 537, 539, 541 (Dr. Restrepo assessment: "fair insight and judgment"); Tr. 529 (Dr. Restrepo assessment: "Good insight and judgment."). Indeed, "a consulting physician's opinions or report should be given limited weight because they are often brief, are generally performed without benefit or review of the claimant's medical history and, at best, only give a glimpse of the claimant on a single day." Harrington v. Colvin, No. 6:13CV01230(MAD), 2015 WL 1275337, at *7 (N.D.N.Y. Mar. 19, 2015) (citation and quotation marks omitted)).

Further, Dr. Martinez's opinion is vague; it does not provide any meaningful insight into plaintiff's mental abilities for the purpose of ascertaining whether plaintiff can maintain substantial gainful employment. Dr. Martinez's opinion is indeed "so vague as to render it useless in evaluating whether [plaintiff] can perform [any] work." Curry v. Apfel, 209 F.3d 117, 123 (2d Cir. 2000), superseded by statute on other grounds, 20 C.F.R. §404.1560(c)(2), as recognized in Douglass v. Astrue, 496 F. App'x 154, 156 (2d Cir. 2012); see also Selian v. Astrue, 708 F.3d 409, 421 (2d Cir. 2013) (The opinion of the

consultative examiner was "remarkably vague" where the examiner used the terms "mild degree" and "intermittent," and the meaning of those terms were "left to the ALJ's sheer speculation.").

Accordingly, substantial evidence supports the ALJ's decision to ascribe no weight to the opinion of Dr. Martinez.

### 5.    State Reviewing, Non-Examining Sources

Last, plaintiff contends that the ALJ erroneously assigned "substantial weight" to the opinions of the state reviewing, non-examining sources, Dr. Douglas Rau, Ph.D., and Dr. Michelle Leveille, Psy.D. See Doc. #24-2 at 33-36.

Plaintiff first asserts that it "appears" that Dr. Rau "saw no opinion evidence from Dr. Gonzalez-Restrepo at the initial level (Tr. 79-80) and not enough medical evidence because Dr. Rau noted 'Jennifer [p]lease try to get additional MER from St. Francis Behavioral Health[.]'" Id. at 35-36. At the initial review level of consideration, Dr. Rau provided a mental RFC determination dated June 18, 2013. See Tr. 89. Plaintiff's contention that Dr. Rau saw no opinion evidence from Dr. Gonzalez-Restrepo is directly contradicted by the Disability Determination Explanation ("DDE") that contains Dr. Rau's opinion. That document lists the evidence of record, indicating that records from St. Francis Care Behavioral Health, where Dr. Gonzalez-Restrepo practiced, see Tr. 429, 529, were received on

April 12, 2013, March 21, 2013, and December 4, 2012. See Tr.
80-81. The findings of fact in the initial level DDE also
explicitly reference treatment notes from St. Francis Behavioral
Health, as well as the mental status questionnaire ("MSQ")
completed by Dr. Gonzalez-Restrepo on December 13, 2012. See,
e.g., Tr. 84 ("MSQ. Pt. Seen 12/2/10-10/5/12 every 2-4 months --
no improvement."). Accordingly, plaintiff's argument that Dr.
Rau reviewed no opinion evidence from Dr. Gonzalez-Restrepo is
entirely without merit.

As to the argument that it "appears" Dr. Rau did not have
enough medical evidence of record, plaintiff relies on the
following note from Dr. Rau: "Please try to get additional MER
from St. Francis Behavioral Health. Clmnt has received treatment
there since 2010. We do have MSQ – but the narrative describe
pretty severe functional impairments, but sometimes the progress
notes, treatment updates, and intakes are not consistent with
the MSQ." Tr. 91 (sic). Plaintiff's speculative argument
disregards the fact that Dr. Rau's note was signed on December
11, 2012, nearly six months before he authored his opinion on
June 18, 2013. See Tr. 89. Accordingly, Dr. Rau's note in
December 2012 is not dispositive of the evidence that was before
him six months later in June 2013. Indeed, the DDE reflects that
additional evidence from St. Francis was obtained after December

2012. See Tr. 80-81. Thus, plaintiff's argument in that regard also lacks merit.

Plaintiff next contends that Dr. Rau and Dr. Leveille "did not have the benefit of reviewing over a year's worth of medical evidence[]" where they made their determinations in June and October 2013, and "did not see Dr. Gonzalez-Restrepo's October 30, 2013 or October 10, 2014 statement[]" or "Dr. Jackson's December 2013 or October 2014 medical source statement." Doc. #24-2 at 35. Although plaintiff fails to support that argument with a citation to any authority, there is case law in this District which has found error when an ALJ relied on the opinion of a non-examining source who did not have the benefit of reviewing the entire record. See, e.g., Jazina v. Berryhill, No. 3:16CV01470(JAM), 2017 WL 6453400, at *7 (D. Conn. Dec. 13, 2017). Here, however, there is no indication that the later received evidence would have had any effect on the opinions of Dr. Rau or Dr. Leveille. Tellingly, plaintiff advances no argument to that point. Indeed, although Dr. Rau and Dr. Leveille did not have the benefit of Dr. Jackson's duplicative physical RFC assessments, those statements opined on plaintiff's physical capabilities. See Tr. 485-92, 546-53. Dr. Jackson provided no opinion as to plaintiff's mental functional capacity. As to Dr. Gonzalez-Restrepo's later opinions, those

opinions are largely duplicative of the one that was then before the state reviewing, non-examining sources. Accordingly, there is nothing to suggest that the later received opinion evidence would have altered Dr. Rau or Dr. Leveille's opinions. See Camille v. Colvin, 104 F. Supp. 3d 329, 344 (W.D.N.Y. 2015) (The ALJ did not err by assigning great weight to the state reviewer's opinion, which "was based on only part of the overall administrative record," because "there was no significantly new medical evidence produced after [the state reviewer's] opinion that would have likely impacted [his] opinion."), aff'd, 652 F. App'x 25 (2d Cir. 2016).

Although Dr. Rau and Dr. Leveille did not examine plaintiff, their findings are generally consistent with the evidence of record, including plaintiff's unremarkable mental status examinations, as discussed throughout this decision. It is well established that "the opinions even of non-examining sources may override treating sources' opinions and be given significant weight, so long as they are supported by sufficient medical evidence in the record." Correale-Englehart v. Astrue, 687 F. Supp. 2d 396, 427 (S.D.N.Y. 2010); see also Ebert v. Berryhill, No. 3:16CV1386(WIG), 2018 WL 3031852, at *5 (D. Conn. June 19, 2018) ("It is well-established that state agency medical consultants are recognized experts in evaluation

of medical issues in disability claims under the Act, and that their opinions can constitute substantial evidence." (quotation marks and citation omitted)). Accordingly, the ALJ did not err in assigning Dr. Rau and Dr. Leveille's opinions substantial weight, particularly where, as here, the opinions of plaintiff's treating sources conflict with the evidence of record.

### C. The RFC Determination

Last, plaintiff contends that the "ALJ's RFC determination lacks impairments as described by plaintiff and treating sources and agency physicians[.]" Doc. #24-2 at 36. Defendant generally responds that the ALJ's RFC determination is supported by substantial evidence. See generally Doc. #26-1 at 4-14.

Plaintiff's RFC is "the most [she] can still do despite [her] limitations." 20 C.F.R. §§404.1527(a)(1), 416.945(a)(1). The RFC is assessed "based on all the relevant evidence in [the] case record[,]" including "all of the relevant medical and other evidence." 20 C.F.R. §§404.1527(a)(1), (3), 416.945(a)(1), (3).

### 1. The ALJ did not Substitute her Opinion for that of Dr. Jackson

Plaintiff contends that the ALJ substituted her opinion for that of Dr. Jackson. See Doc. #24-2 at 31. The Court construes this as an argument that because the exertional aspect of the ALJ's RFC determination is not supported by a particular medical source statement, it is therefore not supported by substantial

evidence.

The RFC determination does not need to "perfectly correspond with any of the opinions of medical sources[.]" Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013). Indeed, where "the record contains sufficient evidence from which an ALJ can assess the claimant's residual functional capacity ... a medical source statement or formal medical opinion is not necessarily required[.]" Monroe v. Comm'r of Soc. Sec., 676 F. App'x 5, 8 (2d Cir. 2017) (citations omitted). In that regard, the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." Matta, 508 F. App'x at 56.

Additionally, the RFC determination does not need to "perfectly correspond with any of the opinions of medical sources[.]" Id. Where, as here, "the medical evidence shows relatively little physical impairment, an ALJ permissibly can render a common sense judgment about functional capacity even without a physician's assessment." House v. Astrue, 5:11CV915(GLS), 2013 WL 422058, at *4 (N.D.N.Y. Feb. 1, 2013) (citation omitted).

Here, there was sufficient evidence, including multiple physical examinations, from which to ascertain plaintiff's exertional RFC. The ALJ reviewed all of the relevant evidence of

record and permissibly assessed plaintiff's RFC after consideration of that evidence. See 20 C.F.R. §§404.1520(a), 416.945(a). Accordingly, the Court finds that substantial evidence, as discussed throughout this decision, supports the ALJ's exertional RFC determination, and the Court finds that she did not substitute her opinion for that of Dr. Jackson.

### 2. Interaction with Coworkers

Plaintiff contends that the ALJ should have limited her to "no interaction with coworkers because she would become distracted by then and would cause a distraction to them." Doc. #24-2 at 37 (sic). Plaintiff further asserts: "It was not enough for the ALJ to limit Ms. Gonzalez to work involving no public contact, because Ms. Gonzalez's mental impairments affect her ability to adequately interact with both coworkers and supervisors." Id. at 38. In support of that position, plaintiff relies on the opinions of Dr. Gonzalez-Restrepo and Dr. Leveille.

The ALJ's RFC determination provides that plaintiff "should ... avoid interaction with the general public, but could have occasional interaction with co-workers and supervisors." Tr. 22. That finding is supported by substantial evidence. Plaintiff reported that she has never "been fired or laid off from a job because of problems getting along with other people." Tr. 264.

She also stated that she gets along with authority figures "good." Id. Mental status examinations generally noted that plaintiff was "cooperative and pleasant" with "good eye contact" and "fair insight and judgment." Tr. 429; see also Tr. 534, 537, 539, 541. Dr. Martinez noted plaintiff "is polite, engages easily[.]" Tr. 450. Although plaintiff relies on Dr. Leveille's finding that plaintiff has moderate difficulties in social interaction, Dr. Leveille also stated that plaintiff is "best suited for employment in a non-public setting. Clmnt capable of taking instruction and direction from supervisors." Tr. 121-22; see also Tr. 89 (Dr. Rau's same finding). Accordingly, the ALJ's determination that plaintiff "should ... avoid interaction with the general public, but could have occasional interaction with co-workers and supervisors[,]" Tr. 22, is supported by substantial evidence.

### 3. Sedentary Work

Plaintiff next argues that the ALJ should have limited her to sedentary work. See Doc. #24-2 at 38-39. In support of that assertion, plaintiff primarily relies on the opinions of Dr. Jackson. See id.

As previously discussed, the ALJ appropriately discounted the opinions of Dr. Jackson as the extent of the restrictions assessed therein conflicts with plaintiff's relatively benign

physical examinations of record. See, e.g., Tr. 383, 386, 391,

393-94, 396, 398, 400-01, 402-03, 404, 437, 501, 509, 522.

Additionally, there is no objective medical evidence of record,

such as diagnostic imaging reports, to support the physical

limitations assessed by Dr. Jackson. Simply, the record fails to

support a finding that plaintiff suffered from any physical

impairment that affected her ability to perform substantial

gainful activity. See, e.g., Tr. 535 (October 5, 2012, treatment

record: "Patient has no known medical problems at this time.").

That is significant as an ALJ "is entitled to rely not only on

what the record says, but also on what the record does not say."

Dumas v. Schweiker, 712 F.2d 1545, 1553 (2d Cir. 1983).

Accordingly, the Court finds no error.

### 4.    Concentration, Persistence, or Pace

Last, plaintiff contends: "The ALJ should have placed

limitations on Ms. Gonzalez's ability to perform concentration

and persistence tasks on a sustained basis." Doc. #24-2 at 39.

Plaintiff does not suggest what those additional limitations

should have been.

At step three, the ALJ found that plaintiff suffered from

"marked" difficulties with regard to concentration, persistence

or pace. Tr. 21. Notably, however, assessments of "limitations

and restrictions from mental impairment at steps two and three

are not an RFC assessment." A. H. v. Comm'r of Soc. Sec., No.
5:17CV0385(WBC), 2018 WL 3369663, at *6 (N.D.N.Y. July 9, 2018).
In her RFC determination, the ALJ limited plaintiff to
"performing simple, routine tasks, involving no more than
simple, short instructions and simple work-related decisions,
with few work places changes. The claimant should avoid working
at fixed production rate pace." Tr. 22 (sic). Those restrictions
generally comport with the evidence of record concerning
plaintiff's difficulties in the areas of concentration,
persistence and pace.

Dr. Rau found plaintiff moderately limited in most areas of
her ability to sustain concentration and persistence, and not
significantly limited in her "ability to make simple work-
related decisions." Tr. 88. Dr. Rau further stated: "Clmnt's
anxiety and depression may negatively impact time sensitive
tasks of greater complexity and detail, but with some direction,
support and encouragement by supervisors when she initiates
work, she can function independently, make decisions, and
perform routine, repetitive tasks within physical limits.
Clmnt's adaptive functioning would most likely improve with
treatment." Tr. 89. At the reconsideration level, Dr. Leveille
found plaintiff mostly moderately or not significantly limited
in her sustained concentration and persistence limitations. See

Tr. 121. Dr. Leveille further explained: "Clmnt's anxiety and depression may negatively impact time sensitive tasks of greater complexity and detail, she can carry out simple tasks for two hour periods in a normal work week. Clt's pace will be decreased but clt can carry out routine, repetitive tasks in a setting that does not require strict adherence to time or production quotas." Id. (sic). Mental status examinations revealed normal recent and remote memory, see Tr. 391, and goal directed thought processes, see Tr. 429, 537, 539, 541. Dr. Gonzalez-Restrepo opined that plaintiff had a "slight problem" "[c]arrying out single-step instructions[,]" Tr. 445, 469, and was "moderately limited" in "[t]he ability to maintain attention and concentration for extended periods[.]" Tr. 555. Each of those findings supports the ALJ's RFC determination.

"There is no requirement that an ALJ use the same language from step two or three in the RFC analysis, so the absence of the words 'concentration, persistence, or pace' in the ALJ's RFC assessment is not per se error." Williams v. Colvin, 98 F. Supp. 3d 614, 633 (W.D.N.Y. 2015) (citation and quotation marks omitted). Here, the ALJ's RFC determination accounts for plaintiff's impairments in her ability to sustain concentration, persistence or pace. See, e.g., McIntyre v. Colvin, 758 F.3d 146, 152 (2d Cir. 2014) ("Here, substantial evidence in the

record demonstrates that McIntyre can engage in 'simple, routine, low stress tasks,' notwithstanding her physical limitations and her limitations in concentration, persistence, and pace. By explicitly limiting the hypothetical to such tasks (after fully explaining McIntyre's physical restrictions), the ALJ sufficiently accounted for 'the combined effect of McIntyre's impairments." (citation and internal quotation marks omitted)); Bendler-Reza v. Colvin, No. 3:15CV1576(JAM), 2016 WL 5329566, at *7 (D. Conn. Sept. 22, 2016) ("As to her claim that the ALJ should have limited Plaintiff's RFC to account for inability to maintain attention, pace, persistence, and concentration, the ALJ noted that plaintiff had 'mild memory problems and mildly impaired concentration, which would limit [plaintiff] to performing simple work.' Doc. #12-3 at 21. The RFC thus accounts for this limitation."). Accordingly, there is no error.

## VI.  <u>CONCLUSION</u>

For the reasons set forth herein, plaintiff's Motion for Order Reversing the Decision of the Commissioner or in the Alterative Motion for Remand for a Hearing **[Doc. #24]** is **DENIED**, and defendant's Motion for an Order Affirming the Decision of the Commissioner **[Doc. #26]** is **GRANTED**.

SO ORDERED at New Haven, Connecticut, this 17th day of

August, 2018.

_____
/s/
HON. SARAH A. L. MERRIAM
UNITED STATES MAGISTRATE JUDGE
